## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

SAMUEL O. B.,                          )
                                       )
          **Plaintiff,**         )
                                       )
v.                                     )      **Case No. 24-CV-0454-CVE-MTS**
                                       )
FRANK BISIGNANO,                       )
Commissioner of Social                 )
Security Administration,[1]            )
                                       )
          **Defendant.**         )

## OPINION AND ORDER

Before the Court is the report and recommendation (Dkt. # 16) of the magistrate judge recommending that the Court affirm the Commissioner of the Social Security Administration's decision to deny plaintiff's claim for disability benefits. Plaintiff has filed a timely objection (Dkt. # 17) to the report and recommendation, and defendant has not filed a response.

## I.

On November 30, 2020, plaintiff Samuel O. B. applied for Title II disability insurance benefits. Dkt. # 9-5, at 2-3. In his application, plaintiff alleged that he had been disabled and unable to work since October 12, 2020. Id. at 2. Plaintiff had been hospitalized for pneumonia the week prior to October 12, 2020, and claimed to have a history of yearly illness and hospitalization, possibly linked to his diagnoses of asthma, bulging discs, high blood pressure, and irregular

---

[1]    Effective March 7, 2025, pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano, Commissioner of Social Security Administration, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

heartbeat. Dkt. # 9-2, at 42.  Plaintiff's claims were initially denied on September 27, 2021, and

were again denied upon reconsideration on December 9, 2022. Id. at 26, 29.  Plaintiff requested a

hearing before an administrative law judge (ALJ), and the ALJ held a hearing on October 17, 2022,

at which plaintiff was represented by counsel. Id. at 55, 57.  At the time of the hearing, plaintiff was

33 years old. Dkt. # 9-5, at 2.  The ALJ reviewed plaintiff's work history and noted that plaintiff had

worked as a front desk consultant for Airco, but he left the job because of "the dust, and the saw, and

the paint that was going on" during the business's renovation, which worsened his health conditions.

Dkt. # 9-2, at 61-62.  Plaintiff reported that he worked for AT&T as a "[s]enior analyst for the

consultant tech team[,]" a data entry role that involved limited customer interaction. Id. at 62-63.

He testified that he was fired from the position for missing work due to health issues. Id. at 62-63,

73-74.  Plaintiff also worked as a meter reader for the City of Tulsa, which required lifting a

maximum of 75 pounds, walking, and bending over to read meters. Id. at 64-65.  Plaintiff also

reported that he worked for Warehouse Specialties but had to leave his job because the environment

was not heat or air controlled. Id. at 79-80.  Plaintiff testified that he then had no income and

stopped driving around early 2020, after he got into a bad car accident. Id. at 66, 67.  He also

testified that he then wore glasses for distance and reading. Id. at 67.

When he filed his appeal, plaintiff further noted a history of asthma, bulging discs, high blood

pressure, and irregular heartbeat. Id. at 34; Dkt. # 9-3, at 15.  At the hearing, plaintiff testified that

he uses a rescue inhaler three times per day and nebulizer twice a day for his asthma; experiences

discomfort sitting, standing, and laying down; and suffers from social anxiety, a low immune system,

as well as allergies to peanuts, shellfish, and Balsam of Peru. Dkt. # 9-2, at 68, 70, 74-76, 77, 80-82.

He testified that he quit his habit of smoking a pack of cigarettes a day in 2018 and then briefly

began smoking again in 2021.  Id. at 68-69.  He reported that he completed high school and a single

semester of college studies.  Id. at 85.

The ALJ called a vocational expert (VE) to testify and posed several hypothetical questions,

including one about a situation similar to plaintiff's but that did not expressly account for the

hypothetical person's moderate limitation as to his ability to complete a normal workday without

interruptions from psychological symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods.  Id. at 86-88.  The VE testified that, based on his

expertise as well as the Dictionary of Occupational Titles (DOT) code,  the hypothetical claimant

would be able to do light work as a routing clerk, marker, office helper, and sedentary work as a

document preparer, addresser, and surveillance system monitor.  Id. at 88-89.

On December 9, 2022, the ALJ issued a written decision denying plaintiff's claim for Title

II disability insurance benefits.  Dkt. # 9-2, at 26.  Therein, the ALJ found that plaintiff had not

engaged in "substantial gainful activity" since October 12, 2020, the alleged onset date.  Id. at 33.

The ALJ also assessed plaintiff as having the severe impairments of respiratory disorders,

neurocognitive disorders, disorders of the skeletal spine, depression, anxiety, and obesity.  Id. at 34.

The ALJ noted that plaintiff had non-severe visual impairment, and the disability determination

service rated his "paragraph B criteria," which concern disability regulations for evaluating mental

impairments, as moderate, moderate, moderate, and mild, respectively.  Id.  The ALJ considered "all

of the claimant's medically determinable impairments, including those that are not severe, when

assessing the claimant's [residual functional capacity]."  Id.  The ALJ concluded that plaintiff did

not have an impairment or combination of impairments that met or equaled one of the listed

impairments in appendix 1 of 20 C.F.R. Part 404, Subpart P.  Id. at 35.  The ALJ examined the

listings related to, inter alia, skeletal spine-related injuries, joint abnormality, chronic respiratory

disorders, asthma, neurocognitive disorders, trauma- and stressor-related disorders, substance abuse, obesity, depressive and bipolar disorders, and anxiety disorders.  Id.  With respect to plaintiff's "paragraph B" criteria, the ALJ remarked that such impairments "must result in *one* **extreme** limitation or *two* **marked** limitations in a <u>broad area of functioning</u>."  <u>Id.</u> (emphases in original). The ALJ defined "marked" limitations as a "seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis."  <u>Id.</u>  The ALJ assessed plaintiff as experiencing three moderate limitations and one mild limitation, falling short of the one "extreme" or two "marked" limitations required to satisfy the paragraph B criteria.  <u>Id.</u> at 35-36.  The ALJ considered all of plaintiff's symptoms and found plaintiff to be "able to perform a full range of light exertion work," despite his inability to work in certain environments, such as around dangerous moving machinery, around high concentrations of dust or fumes, or in routine contact with the general public.  <u>Id.</u> at 36.

The ALJ then determined that plaintiff was unable to perform his past relevant work, but plaintiff retained sufficient residual functional capacity (RFC) to perform other jobs that existed in significant numbers in the national economy.  <u>Id.</u> at 48-50.  The ALJ found that plaintiff could perform the jobs of routing clerk, (merchandise) marker, office helper, addresser, and surveillance system monitor.  <u>Id.</u> 49-50.  In coming to his conclusions, the ALJ considered the VE's testimony, regarding the skill sets required by each role and the types of effort required, as well as the DOT code.  <u>Id.</u> at 48-50, 89-93.  Following the five-step sequential evaluation process mandated by statute, the ALJ found plaintiff to be "not disabled."  <u>Id.</u> at 50.

The Appeals Council denied plaintiff's request for review of the ALJ's determination and adopted the ALJ's decision as the Commissioner's final decision.  <u>Id.</u> at 16.  Plaintiff filed this case seeking judicial review of the ALJ's decision (Dkt. # 2), which was assigned to a magistrate judge

for a report and recommendation (Dkt. # 4).  Before the magistrate judge, plaintiff set forth three main arguments for rejecting the ALJ's findings.  Plaintiff argued that the ALJ erred at steps four and five of his five-part analysis because he found that plaintiff could perform the job of surveillance system monitor, but conflicting conclusions suggest that plaintiff is unable to perform that specific role. Dkt. # 10, at 7-10.  Next, plaintiff posited that the ALJ had failed to explicitly address whether two agency psychologists' conclusions that he relied on were supportable.  Id. at 10-12.  Finally, plaintiff asserted that the ALJ improperly assessed the two agency psychologists' medical opinions before him because he did not adopt their findings into his determination of plaintiff's RFC at step four.  Id. at 10-13.

Following replete briefing (Dkt. # 10; Dkt. # 14; Dkt. # 15), the magistrate judge recommended that this Court affirm the Commissioner's decision (Dkt. # 16, at 1).  Addressing plaintiff's alleged errors in turn, the magistrate judge found that the ALJ noted and recounted the agency psychologists' findings in coming to his decision at step four.  Id. at 7.  Although the ALJ did not explicitly articulate the supportability of the experts' conclusions, as 20 C.F.R. § 404.1520c(c) directs, the magistrate judge could adequately follow the ALJ's reasoning and determine that the correct legal standard was applied.  Id. at 8.  Moreover, plaintiff failed to show material harm that resulted from the errors alleged and also offered no evidence that the ALJ's determination might be altered if remanded.  Id.  The magistrate judge also found no merit to plaintiff's claim that the ALJ was required to incorporate the psychologists' findings, that plaintiff was limited in his ability to complete a normal workday or workweek without interruptions and without rest periods, into the RFC.  Id. at 9.  Specifically, the magistrate judge addressed the fact that hypothetical questions posed to the VE needed not account for this specific "moderate limitation."

Id. Instead, the magistrate judge observed that the ALJ was within his discretion to have considered and weighed the psychologists' opinions in determining plaintiff's RFC. Id.

The magistrate judge also considered but rejected plaintiff's argument that the ALJ erred at steps four and five by finding plaintiff capable of performing the work of surveillance system monitor. Id. at 11-15. The magistrate judge agreed with plaintiff that the ALJ erred in finding that plaintiff could perform the job of surveillance system monitor. Id. at 13. He based this finding on the fact that the DOT classifies each job according to the reasoning level required, on a scale of one to six, and the job of surveillance monitor was assigned a level three, per the DOT and the VE testimony that the ALJ relied on at step five. Id. at 12. By contrast, plaintiff was assessed as capable of performing jobs at level one or perhaps two.[2] Despite the apparent error, the magistrate judge underscored that the error is likely harmless. Id. at 13. In coming to his conclusion, the ALJ examined five possible roles plaintiff could perform that aggregated to 251,900 jobs in the national economy; however, excluding the surveillance system monitor position, the four remaining jobs aggregate to 249,500. Id. at 12-13. The magistrate judge found that the inclusion of 2,400 extra jobs amounted to harmless error, as the remaining 249,500 jobs still represent a "significant number" of jobs in the national economy. Id. at 15. Ultimately, the magistrate judge rejected plaintiff's arguments on all grounds, recommending that the Commissioner's decision be affirmed. Id. at 15.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Fed R. Civ

---

[2]    Although plaintiff attempts to argue that he can perform jobs only with a reasoning level of one, the magistrate judge found plaintiff's argument unpersuasive. Dkt. # 16, at 12 n.5.

P. 72(b)(2); Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002).  The Court

"shall make a de novo determination of those portions of the report or specified proposed findings

or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  The Court may accept,

reject, or modify the report and recommendation of the magistrate judge in whole or in part.  Fed.

R. Civ. P. 72(b).

The Social Security Administration has established a five-step process to review claims for

disability benefits.  See 20 C.F.R. § 404.1520.  The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)].  If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*.  An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities.  *See* 20 C.F.R. § 404.1521.  At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation."  *Allen*, 357 F.3d at 1142.  If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work.  *See id.*  Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy.  *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  The ALJ decided this case at step five of the

analysis, finding that sufficient jobs existed in the national economy to allow plaintiff to find work

and as a result plaintiff is "not disabled."  Dkt. # 9-2, at 49.

At step five, the ALJ must consider a claimant's RFC, age, education, and work experience

to determine if other work exists that a claimant is able to perform.  Williams v. Bowen, 844 F.2d

748, 751 (10th Cir. 1988).  If the claimant can adjust to work outside of his past relevant work, the

ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A).  However, the

ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an

individual with the claimant's RFC.  Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010).

Before the ALJ, the Commissioner bears the burden to present sufficient evidence to support a

finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094

(10th Cir. 1991).

The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ,

but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his

decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir.

2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A

decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or

if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th

Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence

that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th

Cir. 1994).

### III.

Plaintiff raises three main objections to the magistrate judge's report and recommendation.

Dkt. # 17, at 1-3. Plaintiff first asserts that the Court would be engaging in improper post hoc

justification in finding that the ALJ's failure to explicitly address the supportability of two agency

psychologists' conclusions amounted to harmless error. Id. at 1. Plaintiff next argues that the

magistrate judge was mistaken in finding no merit to the claim that the ALJ's RFC was deficient for

failing to incorporate or explain why he did not incorporate into his RFC assessment the agency

psychologists' ratings in response to one question on a mental RFC questionnaire. Id. at 2-3.

Finally, plaintiff objects to the magistrate judge's finding of harmless error with respect to the ALJ's

inclusion of the role of surveillance system monitor in his analysis at step five, arguing that it similarly constitutes improper post hoc justification of an erroneous finding. Id. at 3. After reviewing the record and plaintiff's objections, the Court finds that plaintiff's objections are without merit and accepts the report and recommendation of the magistrate judge.

### A. Supportability of the Agency Psychologists' Conclusions

Before the magistrate judge, plaintiff argued that the ALJ materially erred in not articulating whether he found the opinions of two agency psychologists, Bruce Lochner, Ph. D., and Stephanie Crall, Ph. D., supportable. Dkt. # 10, at 10-13. In his determination, the ALJ summarized Dr. Lochner's initial review findings. Dkt. # 9-2 at 47. Dr. Lochner found that plaintiff can complete repetitive tasks of up to three steps that require little judgment, that plaintiff had slight limitations in his concentration and stamina, and that plaintiff "is presumed able [to] resume adequate work performance within the limits of allowed for rest periods and leave." Id. Dr. Lochner noted that plaintiff could sufficiently interact with supervisors to accept direction and feedback, "typical of work life," although he could not adapt easily to major changes in the workplace without enhanced supervision. Id. Dr. Crall, reviewing the record on reconsideration, reached the same conclusions as Dr. Lochner, adding that plaintiff could withstand brief, incidental public contact and with advanced notice plaintiff could respond to changes in setting with enhanced supervision. Id. The ALJ stated that he "fully considered the medical opinions and prior administrative medical findings," concluding that "the mental RFC showing ability to perform simple, repetitive tasks . . . is persuasive and consistent with the medical evidence of record . . . ." Id. at 47-48.

The ALJ discussed both psychologists' assessments in his decision, but he did not explicitly state whether he found one of the psychologists' opinions, that plaintiff's "mental RFC show[s] ability to perform simple, repetitive tasks," to be supportable. Id. Plaintiff argued before the magistrate judge that this constituted reversible error because the ALJ is statutorily mandated to expressly consider the supportability of expert opinions on which he relied. Dkt. # 10 at 11. An ALJ is guided by 20 C.F.R. § 404.1520c(b)(2) to especially consider the supportability and consistency of the opinions reached, foremost among five factors by which an ALJ may determine the persuasive value of a medical opinion. The supportability determination requires an ALJ to consider the "relevan[ce] [of] the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 404.1520c(c)(1). An ALJ need not defer or give specific weight to any given expert's medical opinions, but he must articulate the persuasiveness of each medical source's opinion based on that source's supportability. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The magistrate judge concluded that "the ALJ did not explicitly address the supportability factor in the persuasiveness evaluation." Dkt. # 16, at 8. Despite this, the magistrate judge still found that he could follow the ALJ's reasoning and determined that the correct legal standards were applied, such that it amounts to harmless error. Id. at 8.

The Court finds that the ALJ did not expressly state that he assessed the supportability of Dr. Lochner's and Dr. Crall's conclusions. But an ALJ is "not . . . required to discuss every piece of evidence in the ongoing disability proceeding, so long as the record shows []he considered all of the evidence." Arterberry v. Berryhill, 743 F. App'x 227, 230 (10th Cir. 2018).[3] In fact, the Tenth Circuit has upheld an ALJ's credibility finding in a case, in which an ALJ failed to

---

[3]      This and other unpublished decisions are not precedential, but they are cited herein for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

expressly state "I find this statement credible" in making a credibility determination, given that

the ALJ's approach to the evidence "performed the essential function of a credibility analysis."

Keyes-Zachary v. Astrue, 695 F.3d 1156, 1169-70 (10th Cir. 2012).  There, the Court held that so

long as a reviewing court "can follow the adjudicator's reasoning in conducting [its] review, and

can determine that correct legal standards have been applied, merely technical omissions in the

ALJ's reasoning do not dictate reversal." Id. at 1166.

Here, the ALJ's determination contains neither an explicit statement of his finding nor

any other language that could"perform[] the essential function of a" supportability analysis.

Although the ALJ did not address the supportability of the psychologists' opinions that plaintiff's

mental RFC shows ability to perform simple, repetitive tasks, he analyzed and recounted relevant

aspects of Dr. Lochner and Dr. Crall's opinions and stated that he found the experts' opinions on

plaintiff's ability to perform simple, repetitive tasks to be both "persuasive and consistent with

the medical evidence . . . ." Dkt. # 9-2 at 47-48.  Besides supportability, an ALJ may find an

expert's opinions persuasive on other grounds, such as consistency, relationship with the

claimant, and specialization.  20 C.F.R. § 404.1520c(c)(1)-(4).

Even though the ALJ did not address the supportability factor, the ALJ did sufficiently

consider the other statutorily enumerated factors, and the Court has before it no reason to believe

that plaintiff suffered any resultant harm.  Plaintiff objects to the magistrate judge's

recommendation that this be considered harmless error, as plaintiff warns that by adopting the

recommendation, the Court would be "engag[ing] in improper post hoc justification." Dkt. # 17,

at 1.  Yet, in the six sentences devoted to this issue in plaintiff's brief, plaintiff failed to address

what, if any, harmful error might result from the ALJ's omission of his explicit reasoning on

supportability.  As "the burden of showing that an error is harmful normally falls upon the party

attacking the agency's determination," plaintiff's briefing on this point falls short. <u>Shinseki v. Sanders</u>, 556 U.S. 396, 410 (2009). Were the Court to remand to the ALJ for reconsideration, it has no reason to believe that such review would alter the original finding that the psychologists' opinions that plaintiff's mental RFC showing ability to perform simple, repetitive tasks has persuasive value. <u>Moua v. Colvin</u>, 541 F. App'x 794, 798 (10th Cir. 2013) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). For these reasons, the ALJ's finding that the psychologists' opinion that plaintiff shows ability to perform simple and repetitive tasks was persuasive, is affirmed.

**B. Incorporation of the Agency Psychologists' Assessment Responses into the RFC**

Nor does plaintiff meaningfully dispute the ALJ's mental RFC assessment. Plaintiff argues that in adopting the agency psychologists' "conclusions" about plaintiff's ability to perform simple and repetitive tasks, the ALJ was also required to adopt in his RFC assessment the psychologists' response to the mental RFC survey, marking plaintiff "moderately limited" in his "ability to complete normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Dkt. # 16, at 9 (quoting Dkt. # 9-3 at 31, 48). The ALJ omitted these specific "contradicted medical opinions" from his determination, and plaintiff asserted that by doing so, the ALJ "merely substituted his own medical judgment for the opinions of his own reviewers." Dkt. # 10, at 13. Plaintiff reasoned that the ALJ must explain why he chose not to adopt in his mental RFC finding the "conclusions" that plaintiff had "moderate limitations," and his failure to do so constitutes reversible error. <u>Id.</u> at 12-13.

What plaintiff characterizes as "uncontradicted medical opinions" or "conclusions" (Dkt. # 17, at 2), are instead the psychologists' ratings, given in response to the same pro forma question on a twenty-eight question assessment of a claimant's mental RFC (Dkt. # 9-3 at 31, 48).  Known as the "Mental Health Residual Functional Capacity Assessment," the assessment's instructions direct the reviewer to utilize it in the following manner:

> The questions [in the first section] help determine the individuals' ability to perform sustained work activities.  However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion.  This discussion(s) is documented in the explanatory text boxes following each category of limitation . . . .  Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.

Dkt. # 9-3 at 29, 47.  Dr. Lochner and Dr. Crall responded to the same twenty-eight questions, including "Rate the individual's sustained concentration and persistence limitations [regarding his] . . . ability to carry out detailed instructions," with responses that ranged from "not significantly limited," to "moderately limited," to "markedly limited."  Id. at 30, 48.  Dr. Lochner and Dr. Crall both responded to the question "Rate the individual's sustained concentration and persistence limitations [regarding his] . . . ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" with a rating of "Moderately limited."  Id. at 31, 48.  Dr. Lochner and Dr. Crall also completed the "narrative discussion(s)" referenced in the instructions.  Id. at 44, 48-49.  In response to the narrative discussion prompt, both psychologists opined that plaintiff "may have variable periods of lapses in attention and concentration . . . but with proper treatment, the claimant is presumed able [to] resume adequate work performance within the limits allowed for rest periods and leave."  Id. at 44, 49.

The Tenth Circuit has called the first section of the assessment, which contains the twenty-eight questions that call for rating responses, "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation [that] does not constitute the RFC assessment." Fannin v. Comm'r, 857 F. App'x 445, 447 (10th Cir. 2021) (mem.) (alteration in original).  In analyzing a challenge to a moderate limitation found in this worksheet, the Tenth Circuit "compares the [ALJ's] findings to [the] opinion on residual functional capacity, not [the] notations of moderate limitations." Smith v. Colvin, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016); Fannin, 857 F. App'x at 447-48.  Put differently, the reviewing Court examines the ALJ's determination with respect to the expert's opinion contained in the narrative section, not the ratings assigned in the first section.

As plaintiff notes, it is an "the ALJ's duty to give consideration to all the medical opinions in the record." Keyes-Zachary, 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  Moreover, an ALJ may give higher value to the responses in the narrative section of the worksheet over the first section only if the narrative portion "does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC." Fulton v. Colvin, 631 F. App'x 498, 502 (10th Cir. 2015).  However, an ALJ is under no obligation to incorporate into an RFC all specific medical opinions about the plaintiff's corresponding capacities.  Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).  The ALJ's determination in this case shows more than weighing the two portions of the worksheet against one another.  In his RFC assessment, the ALJ also found that plaintiff could "understand, remember, and carry out only simple instructions on a sustained basis in a work-related setting," but is still "able to remain attentive and responsive and perform work assignments within [given]

limitations." Dkt. # 9-2 at 36. Comparing the ALJ's choice to omit the response to one question

in the first section of the mental RFC worksheet, to entirety of the ALJ's RFC assessment and

not just to the psychologists' other responses to the worksheet, the Court finds that the ALJ did

not err in excluding the one rating of "moderately limited" from the RFC.

Because the ALJ did not err in excluding the psychologists' responses to the assessment

from his RFC, the ALJ did not, by extension, err in not incorporating that limitation in a

hypothetical question posed to the VE. Before the magistrate judge, plaintiff also asserted that

when the ALJ posed a hypothetical to the VE based on his RFC findings, which did not include

the moderate limitation, the ALJ erred in relying on a response that did not account for the

moderate limitation. Dkt. # 10 at 12. Before this Court, plaintiff raises an objection to a

hypothetical question posed by the ALJ, arguing in full: "It is clear that both mild and moderate

limitations are to be considered in the hypothetical question and RFC." Dkt. # 17, at 2. On this

point, plaintiff begins "blending several claimed errors into a single issue" and requires the Court

to divine his grounds for objection based on briefing not properly before it. Christopher B.S. v.

O'Malley, No. 23-CV-329, 2024 WL 4236299, at *2 (N.D. Okla. Sept. 19, 2024). Before the

magistrate judge, plaintiff properly raised the issue that, because the ALJ allegedly omitted

material findings in his hypothetical question to the VE, the ALJ proceeded to impermissibly rely

on the VE's response based on incomplete information. Dkt. # 10, at 12-13. However, before

this Court, plaintiff has not properly raised the same or a similar objection based on the one

germane sentence in his brief. Regardless, since the Court finds that the ALJ did not err in

excluding the worksheet response of "moderate limitation" from the RFC, there can be no

finding of error with respect to the compounding effect that might have had on hypothetical questions posed to the VE.

### C.  Inclusion of the Surveillance System Monitor Job

Finally, plaintiff argues and the Court agrees that the ALJ erred at step five, in finding that plaintiff could perform the role of surveillance system monitor.  Dkt. # 17, at 3.  However, plaintiff fails to show that the exclusion of the 2,400 surveillance system monitor jobs, out of the 249,500 total jobs available to plaintiff, would alter the outcome of the ALJ's determination were this case remanded.  Jaime S.C. v. Kijakazi, No. 21-CV-494, 2023 WL 3022520, at *7 (N.D. Okla. Feb. 16, 2023); see Moua, 541 F. App'x at 798.

The ALJ found that plaintiff could complete five types of "light exertion unskilled work" in light of plaintiff's "RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines," as well as the VE's testimony and information found in the DOT.  Dkt. # 9-2 at 49-50.  Before the magistrate judge, plaintiff highlighted that of the five types of work enumerated, the surveillance system monitor role is the only role classified as requiring "reasoning level 3," which means the claimant must "deal with problems involving several concrete variables in or from standardized situations" and use "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form."  Dkt. # 10, at 8 (quoting II Dictionary of Occupational Titles, app. C (4th Ed. 1991)).  The other four jobs are, by contrast, classified as needing "reasoning level 2," which necessitates carrying out "detailed but uninvolved written or oral instructions" and only "few concrete variables" in standardized situations.  Id.  (quoting II Dictionary of Occupational Titles, app. C (4th Ed. 1991)).  Reasoning level 2 has been found to be synonymous with an RFC that requires "simple

and routine work tasks," as this one does.  Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir.

2005); Stokes v. Astrue, 274 F. App'x 675, 684 (10th Cir. 2008).  Plaintiff correctly noted and

the magistrate judge properly found that the reasoning level 3 descriptors conflict with the ALJ's

RFC findings, such that plaintiff is equipped to perform roles classified no higher than reasoning

level 2.  Dkt. # 10, at 8; Dkt. # 16, at 12-13.  Despite this over-inclusion, there remains

substantial evidence to support the ALJ's determination that jobs exist in significant numbers in

the national economy that the claimant can perform.

The Tenth Circuit has reiterated that there no "magic number" or "bright line" as to how

many jobs amount to a "significant number" of jobs at step five of the analysis.  See, e.g.,

Trimiar v. Sullivan, 966 F.2d 1325, 1330 (10th Cir. 1992); Evans v. Colvin, 640 F. App'x 731,

736 (10th Cir. 2016).  It is instead up to the ALJ's "common sense in weighing the statutory

language as applied to a particular claimant's factual situation."  Allen, 357 F.3d at 1144

(quoting Trimiar, 966 F.2d at 1330).  In reviewing an ALJ's determinations that were over-

inclusive of jobs at step five, the Tenth Circuit has upheld as harmless error findings that a

plaintiff was capable of performing as few as 152,000 remaining jobs in the national economy.[4]

See Evans, 640 F. App'x at 735 & n.4 (citing Stokes, 274 F. App'x at 684); see also Johnson v.

Comm'r, 764 F. App'x 761-62 (10th Cir. 2019) (finding "significant" 178,000 nationally

available jobs); Shockley v. Colvin, 564 F. App'x 935, 940 (10th Cir. 2014) (finding

"significant" 215,000 nationally available and 17,000 regional available jobs).  By contrast, in

---

[4]     The Tenth Circuit has distinguished between jobs at the national and local levels when it was
        relevant to the ALJ's determination or a plaintiff's objections.  See Chavez v. Barnhart, 126
        F. App'x 434, 436 (10th Cir. 2005).  Here, the ALJ's analysis and the plaintiff's objections
        relate only to jobs at the national level.

Norris v. Barnhart, 197 F. App'x 771 (10th Cir. 2006), the Tenth Circuit found that an

aggregated number of between 190,000 and 210,000 nationally available jobs insufficient to be

"significant," as is required at step five.  That finding was based, in part, on the small number of

jobs available regionally. Id. at 777.  Plaintiff raises no objection to the ALJ's finding on the

basis of regional as compared to national availability.  Plaintiff's objection rests solely on the

ground that a finding of harmless error on this point would "usurp[] the administrative process."

Dkt. # 17, at 3.  Such an objection finds no support in the record before the Court or in precedent;

thus, the Court affirms the ALJ's determination that plaintiff is capable of performing jobs that

exist in significant numbers in the national economy, despite erroneous inclusion of the

surveillance systems monitoring role.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 16) is

accepted, and the Commissioner's decision denying plaintiff's claim for disability benefits is

affirmed.  A separate judgment is entered herewith.

**DATED** this 12th day of September, 2025.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE